# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: April 28, 2022

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| PAUL DROBBIN, | * | |
| | * | No. 14-225V |
| Petitioner, | * | |
| | * | Special Master Sanders |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

*Martin Jeffrey Rubenstein*, Martin Rubenstein, Staten Island, NY, for Petitioner.
*Ryan Daniel Pyles*, United States Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On August 5, 2021, Paul Drobbin ("Petitioner") filed a motion for interim attorneys' fees and costs, requesting **$207,677.42** for his counsel, Mr. Martin Rubenstein, for work performed through the pendency of this case. Mot. Int. Attorneys' Fees & Costs, Aff. of Martin Rubenstein at 2, ECF No. 97-1 [hereinafter "Fees App."]. On August 19, 2021, Respondent filed his response to Petitioner's motion. Resp't's Resp., ECF No. 99. In his response, Respondent stated that "should the Special Master exercise her discretion in awarding interim attorneys' fees and costs, [R]espondent respectfully recommends that the Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs." *Id.* at 3. Petitioner did not file a reply thereafter. For the reasons stated below, the undersigned will award interim attorneys' fees and costs for Petitioner's counsel at this time, subject to minor adjustments.

### I. Procedural History

On March 24, 2014, Petitioner filed a petition for compensation pursuant to the National

---

[1] This Decision shall be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted Decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

Vaccine Injury Compensation Program ("Program").[2] 42 U.S.C. §§ 300aa-1 to -34 (2012); Pet., ECF No. 1. Petitioner initially alleged that the influenza ("flu") vaccine he received on November 18, 2011, caused him to suffer from numerous ailments including, fever, reactive arthritis/joint pain, muscle fatiguability and spasms, extreme fatigue, tingling and numbness, fasciculations and asymmetric muscle atrophy that started in his calves and hands, forearms, and affected his back and leg muscles, buttocks, and shoulders. *Id.* at 1. Petitioner also alleged that his flu vaccine caused his neuropathy, exercise intolerance, breathing problems, and declining lung function. *Id.* Petitioner ultimately narrowed his alleged vaccine-caused injuries to "combined sensory and motor polyneuropathy, overlapping with neuromuscular juncture dysfunction." *See, e.g.*, Pet'r's Br. at 1, ECF No. 76. Over the following year, Petitioner filed medical records and a statement of completion. ECF Nos. 11–13, 15–16, 18, 20, 23, 25, 27.

On May 6, 2015, Respondent filed his Rule 4(c) report, indicating that this case was not appropriate for compensation. Resp't's Report at 1, ECF No. 29. Thereafter, Petitioner filed additional medical records, affidavits, medical literature, and multiple expert reports from Drs. Arthur Brawer and Allan Rubenstein, with Respondent providing expert reports from Dr. Peter Donofrio. ECF Nos. 31, 34–36, 40–42, 46, 48, 51, 53–54, 56, 58–61, 65–66, 68. An entitlement hearing was held on April 17, 2019. *See, e.g.*, ECF No. 92. I issued a Ruling on Entitlement on January 21, 2020, finding that Petitioner is entitled to compensation. Ruling, ECF No. 94. This case is in the damages phase. ECF No. 100.

## II.    Availability of Interim Attorneys' Fees and Costs

### A.  Good Faith and Reasonable Basis

Under the Vaccine Act, petitioners shall recover reasonable attorneys' fees and costs only if "the petition was brought in good faith, and there was a reasonable basis for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1) (2012). "Good faith" is a subjective standard. *Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632, 635 (Fed. Cir. 2017). A petitioner acts in good faith if he or she honestly believes that a vaccine injury occurred. *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). In contrast, reasonable basis is purely an objective evaluation of the weight of the evidence. *Simmons,* 875 F.3d at 636. Respondent does not object to Petitioner's motion on the basis of good faith or reasonable basis. In fact, Petitioner has established he is entitled to compensation in this case, therefore providing overwhelming support for a reasonable basis and that his petition was brought in good faith. Therefore, the undersigned finds that the statutory criterion for an award of interim fees and costs are met.

### B.  Justification for an Interim Award

In *Avera*, the Federal Circuit stated that a special master may award attorneys' fees and costs on an interim basis. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). The Court noted that such awards "are particularly appropriate in cases where proceedings

---

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

are protracted, and costly experts must be retained." *Id.* Similarly, the Federal Circuit held in *Shaw* that it is proper for a special master to award interim attorneys' fees "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim[.]" *Shaw v. Sec'y of Health & Hum. Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010).

Many cases in the Program are proceeding slower than they have in the past. *See Miles v. Sec'y of Health & Hum. Servs.*, No. 12-254V, 2017 WL 4875816 at \*5 (Fed. Cl. Spec. Mstr. Oct. 4, 2017) ("[i]t may be months to years before an entitlement ruling is issued"); *Abbott v. Sec'y of Health & Hum. Servs.*, No. 14-907V, 2016 WL 4151689, at \*4 (Fed. Cl. Spec. Mstr. July 15, 2016) ("[t]he delay in adjudication, to date, is due to a steady increase in the number of petitions filed each year."). As Petitioner's case was filed on March 24, 2014, it has been pending for more than eight years. *See* Pet. At the current pace, a decision awarding damages may not be issued for a year or longer.

Meanwhile, Petitioner's fees and costs have accumulated in the course of prosecuting this case. Petitioner's counsel has requested **$207,677.42** in fees and costs, and "[i]t cannot be seriously argued that in essence loaning cases thousands of dollars for years is not a hardship." *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at \*2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009). Counsel requested $180,992.65 in attorneys' fees and $26,684.77 in costs ($3,769.77 + $22,915.00 = $26,684.77). Aff. of Martin Rubenstein at 2, ECF No. 97-1. Accordingly, counsel's total request for attorneys' fees and costs is $207,677.42. The undersigned must note that counsel's and Petitioner's affidavits seem to contain conflicting assertions regarding whether the $449 hotel expense was included in the $22,915 payment made by Petitioner for expert costs. *See id.* (requesting "costs in the sum of $3,769.77 . . . expert fees in the sum of $22,915.00[,] together with $449.00 for travel and lodging expenses for expert[.]"); *But see* Aff. of Paul Drobbin at 1, ECF No. 97-3 (requesting "the sum of $22,915.00 [] for expert fees, and travel and lodging expenses for [the] expert, and additionally [Petitioner's] attorneys have paid the sum of $1,925.00[.]"). After careful analysis, the undersigned finds that the $449 hotel expense was included in the sum of $22,915 paid by Petitioner for expert costs, which therefore results in a total request for costs of $26,684.77. Indeed, because of the protracted nature of the proceedings and the accumulation of fees and costs, the undersigned finds an award of interim attorneys' fees and costs reasonable and appropriate in this case.

### III.    Reasonable Attorneys' Fees

Only reasonable attorneys' fees may be awarded, and it is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("the reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). In making a determination, applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316–18 (2008).

The Federal Circuit has approved the lodestar formula to determine reasonable attorneys'

fees under the Vaccine Act. *Avera*, 515 F.3d at 1348. This is a two-step approach. *Id*. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Avera*, 515 F.3d at 1348.

### A. Reasonable Rates

Forum rates are used in the lodestar formula, except when the rates in an attorneys' local area are significantly lower than forum rates. *Id.* at 1348–49. In a 2015 decision, Special Master Gowen determined the reasonable forum rate ranges for attorneys with varying years of experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *18-19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *mot. for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). When considering whether a requested rate is reasonable, special masters may consider an attorney's overall legal experience and his experience in the Vaccine Program, as well as the quality of the work performed. *Id*. at *17. The *McCulloch* rates have been updated for subsequent years and are accessible on the Court's website at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters.

#### a. Reasonable Hourly Rates

Petitioner requests that his counsel Martin Rubenstein, be compensated at the following hourly rates for his representation of Petitioner: $430 per hour for work performed in 2013–2016; $440 per hour for work performed in 2017; $455 per hour for work performed in 2018; $464 per hour for work performed in 2019; $484 per hour for work performed in 2020; and $509 per hour for work performed in 2021, for a total of **$180,992.65.** The undersigned has reviewed the hourly rates requested by Petitioner for the work of his counsel through the duration of this case. The billing records indicate that all the attorney work in this case has been performed by Martin Rubenstein. The undersigned finds the rates for 2013–2017 to be reasonable and consistent with what myself and other special masters have awarded Mr. Rubenstein for his Vaccine Program work. However, the rates requested for 2018–2021 require minor adjustments.

The undersigned agrees with the well-reasoned analysis put forth in *Whelan v. Sec'y of Health & Hum. Servs.,* finding that based on counsel's experience in the Program, counsel's requested rates for 2018 and 2019 exceed what he has previously been awarded for work during these years. *See* No. 16-1174V, 2019 WL 5290521, at *2 (Fed. Cl. Spec. Mstr. Sept. 11, 2019) (awarding Mr. Rubenstein $450 per hour for 2018 and $460 per hour for 2019); *see also Larsen v. Sec'y of Health & Hum. Servs.,* No. 16-1018V, 2019 WL 927044, at *2 (Fed. Cl. Spec. Mstr. Feb. 6, 2019); *Ben v. Sec'y of Health & Hum. Servs.,* No. 17-1149V, 2020 WL 1893531, at *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2020). The undersigned will also compensate Mr. Rubenstein's work during 2018 and 2019 at those rates, along with the following adjustments: $480 per hour for work performed in 2020; $500 per hour for work performed in 2021. Petitioner's adjusted total request for interim fees is therefore **$180,028.50**, resulting in a deduction of **$964.15.**

4

### b. Hours Expended

The second step in *Avera* is for the Court to make an upward or downward modification based upon specific findings. *Avera*, 515 F.3d at 1348. Upon review, the undersigned finds that the billed hours are largely reasonable. However, while clerical and other administrative work is necessary in every case, billing separately for such work is not permitted in the Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (tasks that were "primarily of a secretarial and clerical nature . . . should be considered as normal overhead office costs included with the attorneys' fees rates"). Clerical and administrative work includes organizing exhibits, preparing compact discs, and filing records. *Floyd v. Sec'y of Health & Hum. Servs.*, No. 13-556V, 2017 WL 1344623, at *5 (Fed. Cl. Spec. Mstr. Mar. 2, 2017); *Hoskins v. Sec'y of Health & Hum. Servs.*, No. 15-071V, 2017 WL 3379270, at *3 (Fed. Cl. Spec. Mstr. July 12, 2017); *Kerridge v. Sec'y of Health & Hum. Servs.*, No. 15-852V, 2017 WL 4020523, at *3 (Fed. Cl. Spec. Mstr. July 28, 2017). Counsel billed for the "supervision of filing" of documents on several occasions throughout 2014 and 2016–2017. *See, e.g.*, Aff. of Martin Rubenstein, Ex. A at 15, ECF No. 97-2 (billing one hour on 10/20/2014 and 10/22/2014, for "review of file, review of medical records, supervision of filing medicals"); *id.* at 11 (billing half an hour on 05/03/2016, for "telephone consult with client, call to [expert], supervision of filing medical report . . . ."); *id.* at 7 (billing half an hour on 06/05/2017, for "review of [expert] report, file review, supervision of filing"). The undersigned finds that counsel's supervision of the filing of records is akin to the clerical act of filing records. However, most of these entries are "block billed" with appropriate tasks that are compensable in the Program, making it difficult to determine the precise number of hours that represent non-compensable tasks. *See Broekelschen v. Sec'y of Health and Human Servs.*, 102 Fed. Cl. 719, 729 (2011) (noting that in making reductions, a line-by-line evaluation of the fee application is not required); *see also Wasson v. Sec'y of Health and Human Servs.*, 24 Cl. Ct. 482, 484 (1991). After careful analysis, the undersigned estimates that no less than 4 hours billed by Mr. Rubenstein reasonably represents non-compensable work. Therefore, the undersigned will reduce the total award by **$1,734.**[3]

Counsel has otherwise provided sufficiently detailed descriptions for the tasks he performed, and upon review, the undersigned does not find any of the remaining billing entries to be unreasonable.[4] Accordingly, Petitioner is entitled to interim attorneys' fees in the amount of **$178,294.50**.

### B. Costs

Similar to attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Petitioner has requested

---

[3] After a close inspection of counsel's billing records, the undersigned estimates that approximately 2.1 hours were dedicated to the supervision of filing records in 2014 (2.1 x $430/hr = $903); .5 hours in 2016 (.5 x $430/hr = $215); and 1.4 hours in 2017 (1.4 x $440 = $616). Applying counsel's adjusted rates, this results in a total deduction of $1,734.00.

[4] The undersigned must note that while Petitioner has provided sufficiently detailed billing entries, there were notations containing typographical errors. For instance, Petitioner listed incorrect dates for work performed on two dates, one in 2014 and 2015, respectively. *See* Aff. of Martin Rubenstein, Ex. A, at 15, ECF No. 97-2 (noting work performed on "03/30/25"); *see also id.* at 17 (noting work performed on "01/38/14"). Such typographical errors do not affect the reasonableness of the provided entries.

**$3,769.77** in interim costs incurred by his counsel, along with **$22,915.00** in costs incurred by Petitioner himself for a total of **$26,684.77**. Aff. of Martin Rubenstein at 2; Aff. of Paul Drobbin at 1. This amount is comprised of **$24,840.00** in expert fees for work performed by Drs. Brawer and Rubenstein, including their retainer fees, along with a travel costs and a hotel stay for Dr. Rubenstein in Washington, D.C. for the entitlement hearing. *See* Aff. of Paul Drobbin, Ex. A at 2, 38, ECF No. 97-4. The remainder of Petitioner's requested costs is comprised of acquiring medical records, medical literature, postage, and photocopies.

Dr. Brawer billed at a rate of $500–$550 per hour for work related to this matter. *See id.* at 15, 24. As an initial matter, the highest hourly rate awarded to any expert in the Program is generally $500 per hour. *Dempsey v. Sec'y of Health & Hum. Servs.,* No. 04-394V, 2017 WL 6343870 (Fed. Cl. Spec. Mstr. Nov. 16, 2017). Special masters typically reserve that rate for highly-credentialed, experienced, and competent Vaccine Act expert witnesses. Dr. Brawer provided written expert reports but did not testify at the entitlement hearing. Petitioner has failed to present sufficient evidence justifying Dr. Brawer's proposed hourly rate in this matter as special masters have previously found otherwise. *See, e.g.*, *Cabrera v. Sec'y of Health & Hum. Servs.,* No. 13-598V, 2017 WL 656303 (Fed. Cl. Spec. Mstr. Jan. 23, 2017) (awarding Dr. Brawer $400 per hour for work performed in 2017). Petitioner has also failed to provide sufficient invoices for Dr. Brawer, documenting the number of hours worked, the tasks performed, and if he was, in fact, the individual performing the work. Instead, Petitioner submitted invoices containing flat rate retainer fees and general descriptions of tasks limited to the "review of documents." The invoices do not list the name of the expert, or the hours expended. *See* Aff. of Paul Drobbin, Ex. A at 15, 24, 30, 34; *see also Moses on behalf of P.M. v. Sec'y of Health & Hum. Servs.,* No. 19-739V, 2020 WL 6778002 (Fed. Cl. Spec. Mstr. Oct. 23, 2020) (denying without prejudice an award of expert fees and cautioning Petitioner and Dr. Brawer to substantiate his expert fees with descriptive invoices documenting the services rendered); *Hanson on behalf of L.R.H. v. Sec'y of Health & Hum. Servs.,* No. 18-590V, 2020 WL 5628694 (Fed. Cl. Spec. Mstr. Aug. 24, 2020) (awarding interim expert fees but warning Petitioner and Dr. Brawer that he must provide sufficiently detailed invoices to be compensated in the future); *Nifakos v. Sec'y of Health & Hum. Servs.,* No. 14-236V, 2018 WL 7286553, at *5 (Fed. Cl. Spec. Mstr. Dec. 12, 2018) (deferring an award of expert fees when the expert's invoice was not detailed). In light of Petitioner's failure to submit a detailed invoice for Dr. Brawer's services, a determination of Dr. Brawer's appropriate rate is unnecessary at this time, and an award of interim expert fees for Dr. Brawer is therefore deferred.

Dr. Rubenstein billed at an hourly rate of $600 per hour. Aff. of Paul Drobbin, Ex. A at 30, 34. When determining a reasonable hourly rate for expert work, an expert's professional qualifications and relevant experience can be considered. *See, e.g.*, *Homick v. Sec'y of Health & Human Servs.*, No. 15-1529, 2018 WL 3991376, at *13 (Fed. Cl. Spec. Mstr. June 26, 2018). However, similar to Dr. Brawer, Petitioner did not provide sufficient evidence showing that Dr. Rubenstein is entitled to the proposed rate. The invoices provided also do not describe the work performed by Dr. Rubenstein or the hours expended. Aff. of Paul Drobbin, Ex. A at 30, 34. While the undersigned is more inclined to award fees to Dr. Rubenstein at his requested rate in light of his valuable testimony resulting in a ruling on entitlement in favor of Petitioner, the undersigned cannot do so without a detailed invoice. *See, e.g.*, *Homick*, 2018 WL 3991376, at *13; *Nifakos*, 2018 WL 7286553, at *5. Accordingly, a determination of hourly rates and total expert fees requested herein for Dr. Rubenstein is also deferred.

Additionally, Petitioner failed to provide adequate documentation for travel and transportation costs expended for the entitlement hearing in Washington, D.C. Aff. of Paul Drobbin, Ex. A at 38. Petitioner's invoice generally lists costs for round trip car and air fares, totaling $840.00. *See id.* However, Petitioner failed to provide the receipts for such costs. *See Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005) (finding that when petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation). Accordingly, the undersigned will defer the reimbursement of travel and transportation costs.

Further, a slight reduction is warranted for the cost of Petitioner's expert's hotel stay in Washington, D.C. Dr. Rubenstein stayed one night in a 5-star hotel, Sofitel – Lafayette Square, for $449 per night. Such an expense is not appropriate for reimbursement in the Program. *See McCollum v. Sec'y of Health & Hum. Servs.*, No. 14-790V, 2017 WL 6888827, at *4 (Fed. Cl. Spec. Mstr. Nov. 28, 2017) (reducing nightly hotel rates over $300.00 to the government's per diem rate of $242.00); *see also Leong v. Sec'y of Health & Hum. Servs.,* No. 17-197V, 2019 WL 6334004, at *5 (Fed. Cl. Spec. Mstr. Oct. 31, 2019) (warning petitioners that they "may choose a more expensive hotel that is nearer to the Court, but that does not require the Court to fully reimburse [a] petitioner for high hotel costs."). Accordingly, the undersigned will deduct $149.00 for this expense and compensate Petitioner $300.00 for Dr. Rubenstein's hotel stay. Therefore, at this time, Petitioner's request for expert costs totaling $24,840.00 shall be reduced by $24,540.00.

Petitioner has otherwise provided adequate documentation of the remaining requested costs, including those for medical records, medical literature, and photocopies, and the costs are largely reasonable in the undersigned's experience. Those costs shall be awarded in full. The total amount of costs awarded shall therefore be reduced by **$24,540.00.**[5]

In light of the undersigned's decision to defer the award of costs for Petitioner's expert's fees and travel-related expenses, Petitioner may submit appropriate documentation, including detailed invoices and receipts for expert expenses, within fourteen (14) days of the filing of this Decision in the form of a supplemental motion for interim costs. Alternatively, Petitioner may submit this documentation along with his application for final attorneys' fees and costs. Upon Petitioner's submission, Petitioner's request for costs may be re-examined.

### IV.    Conclusion

In accordance with the Vaccine Act, 42 U.S.C. §15(e) (2012), the undersigned has reviewed the billing records and costs in this case and finds that Petitioner's request for interim fees and costs is reasonable. Based on the above analysis, the undersigned finds that it is reasonable to compensate Petitioner and his counsel as follows:

---

[5] Petitioner's total request for costs is $26,684.77. The undersigned is deferring an award of expert fees and travel/transportation costs unless and until counsel files supplemental documentation, providing sufficiently detailed invoices and receipts for such costs. This results in a deduction of $24,840.00. However, as Petitioner did provide a receipt for his expert's hotel stay, albeit with one adjustment, the undersigned will compensate Petitioner for that adjusted cost at this time. Therefore, Petitioner's award of interim attorneys' costs is $2,144.77 ($26,684.77 - $24,840.00 = $1,844.77 + $300.00 = $2,144.77).

| | |
|---|---|
| Interim Attorneys' Fees Requested | $180,992.65 |
| (Reduction to Fees) | $2,698.15 |
| **Interim Attorneys' Fees Awarded** | **$178,294.50** |
| | |
| Interim Attorneys' Costs Requested | $26,684.77 |
| (Reduction of Costs) | $24,540.00 |
| **Interim Attorneys' Costs Awarded** | **$2,144.77** |
| | |
| **Interim Attorneys' Fees and Costs** | **$180,439.27** |

Accordingly, the undersigned awards a lump sum in the amount of **$180,439.27** to be issued in the form of a check payable jointly to Petitioner and Petitioner's counsel Martin Rubenstein, for interim attorneys' fees and costs.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above Decision.[6]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.